AO 91 (Rev. 11/11) Criminal Complaint   AUSA John D. Mitchell (312) 353-5159
AUSA Grayson Walker (312) 697-4091

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KRZYSZTOF RAK,<br>CHRISTOPHER J. DOSS,<br>DONALD HOLMES, SR., a.k.a. "Big Don," and<br>IVAN WALTON | CASE NUMBER:<br><br>**UNDER SEAL**<br><br>18 CR 356<br><br>MAGISTRATE JUDGE MARTIN |

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

**Count One**

*Code Section*

Title 21, United States Code, Section 846

*Offense Description*

Beginning no later than on or about March 16, 2018, and continuing to at least on or about March 19, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants KRZYSZTOF RAK and CHRISTOPHER J. DOSS did conspire with each other and with others known and unknown to knowingly and intentionally distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

FILED

JUN 11 2018

MAGISTRATE JUDGE
DANIEL G. MARTIN

**Count Two**

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Beginning no later than on or about March 16, 2018, and continuing to at least on or about March 19, 2018, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendants DONALD HOLMES, SR. and IVAN WALTON did conspire with each other and with others known and unknown to knowingly and intentionally distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. |

This criminal complaint is based upon these facts:

   X   Continued on the attached sheet.

*[signature]*
NICHOLAS J. ALBERT,
Special Agent
Drug Enforcement Administration (DEA)

Sworn to before me and signed in my presence.

Date: 6/11/2018

*[signature]*
Judge's signature

City and state: Chicago, Illinois

Hon. DANIEL G. MARTIN, U.S. Magistrate Judge
*Printed name and Title*

| UNITED STATES DISTRICT COURT | ss |
|---|---|
| NORTHERN DISTRICT OF ILLINOIS | |

## AFFIDAVIT

I, NICHOLAS J. ALBERT, being duly sworn, state as follows:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so employed since September 2015. Before joining the DEA, I was employed for approximately two years as a patrol deputy with the Lee County, Illinois Sheriff's Department and for approximately 11 years as a police officer and detective with the Dixon, Illinois Police Department. I am currently assigned to the DEA Chicago Field Division, High Intensity Drug Trafficking Areas (HIDTA) Group 43, and my responsibilities include the investigation of narcotics trafficking offenses.

2. Since becoming a DEA Special Agent, my duties have included the investigation of criminal violations of federal narcotics laws, including, but not limited to, 21 U.S.C. §§ 841(a)(1), 843(b), and 846, along with violations of 18 U.S.C. §§ 1956 and 1957 (money laundering). In addition, I have been involved in various types of electronic surveillance (including the interception of wire and electronic communications) and the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances. Through my training, education, and experience, I have become familiar with the manner in which illegal narcotics are transported, stored, and distributed and the methods of payments for those narcotics. As part of my responsibilities as a DEA Special Agent, I have written affidavits in support of Title III applications and

criminal complaints. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized from the purchase and sale of controlled substances, monetary instruments, and various assets that were purchased with the proceeds of the drug trafficking.

3. Because this Affidavit is for the limited purpose of establishing probable cause to support the criminal complaint and the issuance of arrest warrants against the proposed defendants, it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the entities, individuals, and events described in this Affidavit.

4. This affidavit is submitted in support of a criminal complaint alleging that:

    a. KRZYSZTOF RAK and CHRISTOPHER J. DOSS did conspire with each other and with others known and unknown to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846; and

2

b. DONALD HOLMES, SR. and IVAN WALTON did conspire with each other and with others known and unknown to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

5. This affidavit is based on based in part on: (a) my personal participation in this investigation; (b) information provided by other federal and local law enforcement officers ("law enforcement officers" or "LEOs"); (c) review of conversations intercepted pursuant to orders authorizing the interception of wire and electronic communications; (d) Illinois State Police laboratory analysis reports; (e) surveillance reports; (f) criminal history records; (g) information from cooperating sources and cooperating defendants; and (h) my training and experience and the training and experience of other law enforcement agents.

## I. Background on the Narcotics Trafficking Investigation

6. The complaint is based on a joint investigation of LEOs from the DEA, Chicago Police Department ("CPD"), and Bureau of Alcohol, Tobacco, Firearms and Explosives "ATF"). During the investigation, and in part through court-authorized interceptions of communications over various cellular phones, physical surveillance, and seizures of illegal narcotics, LEOs have gathered evidence that KRZYSZTOF RAK, CHRISTOPHER J. DOSS, DONALD HOLMES, SR. and IVAN WALTON were responsible for distributing wholesale quantities of fentanyl throughout the Northern

3

District of Illinois and elsewhere. Specifically, law enforcement has identified KRZYSZTOF RAK as a Mexico-based narcotics trafficker who worked with others, including narcotics courier CHRISTOPHER J. DOSS, to distribute wholesale quantities of fentanyl to wholesale narcotics customers in the Northern District of Illinois and elsewhere, including to DONALD HOLMES, SR., IVAN WALTON, and other members of HOLMES' Drug Trafficking Organization ("HOLMES DTO"). After receiving the narcotics from RAK and DOSS, WALTON and HOLMES, SR., together with other HOLMES DTO members, distributed the narcotics on the west side of Chicago and elsewhere.

7. In the process of this investigation, the government sought, and the Court granted, authority to intercept wire and electronic communications of several phones. One such Order entered by Chief Judge Ruben Castillo on March 9, 2018, authorized the interception, for a 30-day period, of wire communications to and from (312) 351-2079 ("Target Phone 5"), used by HOLMES, SR., as well as wire communications to and from (312) 856-5602 ("Target Phone 6"), used by WALTON. Law enforcement interception of Target Phone 5 began on March 10, 2018 and continued until April 8, 2018. Law enforcement interception of Target Phone 6 began on March 10, 2018 and continued until March 26, 2018.

**II. RAK and DOSS Distributed Approximately 887.5 Grams of Fentanyl to WALTON and HOLMES, SR.**

8. As described in additional detail below, between on or about March 16, 2018 and on or about March 19, 2018, RAK and DOSS agreed to distribute narcotics to WALTON, and WALTON and HOLMES, SR. agreed to share the narcotics once

4

they received it from RAK and DOSS. On or about March 19, 2018, DOSS distributed approximately 887.5 grams of fentanyl to WALTON. LEOs conducted surveillance of the meeting between DOSS and WALTON, seized the approximately 887.5 grams of fentanyl, and arrested WALTON.

9. Specifically, on or about March 16, 2018, at approximately 9:37 p.m. (Session 765), HOLMES, SR., using Target Phone 5,[1] had a telephone conversation with WALTON, using Target Phone 6.[2] During the call, WALTON said, "I supposed to be getting up with Krys' ass [WALTON was working on a wholesale narcotics deal with KRZYSZTOF RAK][3] and then I'm gonna come out there. I'm gonna bring you

---

[1] LEOs identified DONALD HOLMES SR. as the user of Target Phone 5 based in part on the following. First, LEOs have confirmed that Target Phone 5 was activated on or about June 9, 2016 and is subscribed in the name of "DONALD HOLMES" at an address on the 4700 block of W. Maypole, Chicago, Illinois 60644. Second, in or about March 2018, LEOs met with HOLMES SR. at that address for a voluntary interview regarding the murder of Individual A, a relative of HOLMES, SR. At that time, HOLMES, SR. identified himself as DONALD HOLMES, SR. LEOs who participated in the voluntary interview positively identified HOLMES SR. based on a comparison to a known photograph of DONALD HOLMES, SR. Third, LEOs familiar with HOLMES SR.'s voice because they participated in that interview listened to intercepted calls over Target Phone 5 and positively identified HOLMES SR. as the user of Target Phone 5. Finally, during court-authorized intercepted calls, several callers have referred to the user of Target Phone 5 as "Big Don," a known nickname of DONALD HOLMES, SR.

[2] LEOs identified IVAN WALTON as the user of Target Phone 6 based in part on the following. First, as described in more detail below, on or about March 19, 2018, LEOs arrested WALTON, who identified himself as IVAN WALTON and presented a driver's license bearing WALTON's name and photograph. Second, WALTON has previously spoken with LEOs. LEOs familiar with WALTON's voice from those conversations listened to intercepted calls over Target Phone 6 and positively identified WALTON as the user of Target Phone 6.

[3] At various points in this Affidavit, I have provided my interpretations of certain recorded conversations in brackets and otherwise. My interpretations of these conversations are based on my knowledge of the investigation to date, the contents and context of the conversations, prior and subsequent conversations, information from cooperating individuals, the results of physical surveillance, conversations with other agents and my experience and familiarity with narcotics trafficking organizations generally. Some of these summaries do not include references to all the topics covered during the course of the conversations. In addition, the

5

something, you know [WALTON and HOLMES, SR. were going to share some of the narcotics WALTON received from RAK]?" HOLMES, SR. responded, "mm hmm [Yes]." During the call, WALTON said, "That mother fucker, our Krys [RAK], had that boy [DOSS] sitting out there [waiting for narcotics] for two weeks, man." HOLMES, SR. said, "I know. In Cali [California], right?" WALTON replied, "Yup." HOLMES asked, "They finally see him [did DOSS get the narcotics]?" WALTON explained that "they [unknown people] ran off with the shit [the narcotics]," but later added, "He's [RAK] got some other shit [another narcotics shipment] in the fryer…I think it's gonna turn out real good [the narcotics will be good quality]."

10. On or about March 17, 2018, at approximately 2:15 p.m. (Session 35274), HOLMES, SR., using Target Phone 5, had a telephone conversation RAK, using +65-31620849 ("RAK Phone 1").[4] During the call, RAK asked, "You don't see Chris [DOSS] today? He supposed to be over there today." HOLMES SR. responded, "Nah, I haven't heard from him." RAK then stated, "Let me try to call him [DOSS] and see if he answer. He was supposed to meet Ivan [WALTON] yesterday, last night. Maybe he [DOSS] sleeping." Later, RAK said, "I'm gonna call you tonight. Let me try to get ahold of Chris [DOSS]." HOLMES, SR. responded, "Ok."

---

summaries do not necessarily include references to all statements made by the speakers on the topics that are mentioned. All dates and times are approximate and, unless otherwise stated, all times are in Central Time.

[4] LEOs identified RAK as the user of RAK Phone 1 based in part on the following. On July 23, 2017, at approximately 8:53 p.m. (Session 2113), the user of phone number +52-3319530052 ("RAK Phone 2") identified himself as "KRYSZTOF WITOLD RAK" of "Ensenada City. Baja California. North State. Mexico VC 5656." LEOs familiar with the voice of the user of RAK Phone 2 and RAK Phone 1 positively identified the user of RAK Phone 2 and RAK Phone 1 as the same person: KRYSZTOF RAK.

6

11. At approximately 4:22 p.m. (Session 35297), RAK, using RAK Phone 1, had a telephone conversation with HOLMES, SR., using Target Phone 5. During the call, RAK said, "I finally talked to him [DOSS]…He is still in Albuquerque, man. His car supposedly messed up [DOSS' car broke down in Albuquerque, New Mexico]. That boy's got a brain tumor." Later, RAK said, "Hey listen, what's the name of the white boy that hangs around with you?" HOLMES, SR. responded, "Timmy?" RAK asked, "You think he's available to pass some paperwork [narcotics proceeds] from [Individual B, a HOLMES DTO narcotics associate and relative of HOLMES, SR.] to this guy? This Mexican guy? Because I don't want this Mexican guy to know that it's [Individual B] we're working with. You know what I mean?" HOLMES, SR. answered, "Yeah, I'll probably get him to do it." RAK then said, "It ain't much. Like it's under ten dollars [$10,000]." HOLMES, SR. asked, "Where does he ['Timmy'] got to meet them at?" RAK answered, "I got to call the guy. It's somewhere on the west side [west side of Chicago]." HOLMES, SR. said, "Ok." RAK then said, "We got to start helping each other big time, dude. Go forward man. Because you know what? Bombs are falling on my head and I'm trying to make it [RAK was trying to pay existing drug debts to unknown narcotics suppliers]. Hopefully there's a new job [a new shipment of narcotics being delivered by DOSS] by the end of the day. One black one [a kilogram of black tar heroin] and one Ray Charles [a kilogram of heroin, which, as explained below, was in fact fentanyl], hopefully. And Chris [DOSS] comes in with that and I'll get out of the bullshit I'm in, because boy oh boy, I'm in some bullshit [another suspected reference to RAK's existing drug debts to unknown narcotics

7

suppliers]. But I'll get out of it. One way. Got to keep working [continue trafficking narcotics]."

12.     On or about March 19, 2018, at approximately 1:39 p.m., WALTON, using Target Phone 6, had a telephone conversation with HOLMES, SR., using Target Phone 5. During the call, HOLMES, SR. asked, "What happened?" WALTON responded, "I've been waiting on black Chris, Truck Driver Chris [DOSS], to show up, man. He's been lolli gagging [taking too long], man. Three days, man. Every time he call, he got a different story about what happened. He said he in a sand storm. Then he said it raining and hailing. He told me he gonna be here two days ago. Just now he getting to St. Louis, and he said he gonna be here at 5 o'clock." HOLMES, SR. asked, "Today?" WALTON answered, "Yeah, today. I just check and he didn't even answer the phone all day. He don't answer the phone until night time." HOLMES, SR. asked, "Do he got it [the narcotics]?" WALTON responded, "Yeah, he got it [the narcotics]. He done have the shit [the narcotics] for a week and a half now." HOLMES, SR. asked, "Have the stuff on his person for a week and a half now?" WALTON responded, "Two weeks." Later, HOLMES, SR. asked, "Did Krys [RAK] send him [DOSS] some money [payment for narcotics being delivered by DOSS]?" WALTON answered, "We sent the money to big boy [RAK]." HOLMES, SR. asked, "How much [how much did we send to RAK for the narcotics that DOSS was delivering]?" WALTON responded, "Shit, about 5 [$5,000]." The conversation continued, and WALTON said, "Soon as dude [DOSS] get here, I'm gonna get everything together and I'm gonna come up there, give you your…and get my ass to

8

work [after WALTON received the narcotics from DOSS, he (WALTON) would travel to HOLMES, SR.'s home and share some of the narcotics with HOLMES, SR., and then begin distributing the drugs]."

13. Later on or about March 19, 2018, at approximately 5:31 p.m., LEOs conducting surveillance of WALTON observed him arrive at a Toy R Us store located at 1603, 5001 Lincoln Highway, Matteson, Illinois. WALTON was driving a red 2017 Chevrolet Silverado pickup truck ("WALTON Vehicle 1"), and LEOs observed an unknown female in the passenger's seat. Moments later, LEOs observed WALTON drive WALTON Vehicle 1 across the parking lot and park in front of a Pet Smart store.

14. At approximately 5:48 p.m., LEOs observed a black Ford Mustang ("DOSS Vehicle 1") arrive in front of the IHOP Restaurant located at 20900 S. Cicero Avenue, Matteson, Illinois. LEOs positively identified the driver of DOSS Vehicle 1 as CHRISTOPHER J. DOSS based on a comparison to DOSS' Wisconsin driver's license photograph. The IHOP Restaurant was located in the same parking lot, just north of the Pet Smart store.

15. At approximately 5:51 p.m., LEOs observed WALTON exit WALTON Vehicle 1, and the unknown female remained in the passenger's seat of WALTON Vehicle 1. LEOs observed WALTON walk northbound, toward the IHOP Restaurant, and further observed that WALTON did not have anything in his hands at that time. LEOs also observed DOSS exit the IHOP Restaurant.

9

16. LEOs then observed WALTON and DOSS walk toward and enter DOSS Vehicle 1. DOSS entered the driver's seat and WALTON entered the passenger's seat.

17. At approximately 6:01 pm., LEOs observed WALTON exit the passenger's seat of DOSS Vehicle 1 carrying a weighted white plastic bag. Based on my training and experience and knowledge of the investigation, I believed that the white plastic bag contained narcotics that WALTON had just received from DOSS.

18. Minutes later, LEOs observed DOSS depart the area in DOSS Vehicle 1. LEOs observed WALTON walk toward WALTON Vehicle 1, enter the vehicle, and drive through the parking lot. LEOs attempted to initiate a stop of WALTON Vehicle 1 using police lights and sirens, but WALTON refused to stop the car and attempted to flee.

19. While pursuing WALTON Vehicle 1 on Lincoln Highway, LEOs observed WALTON throw out of the window of WALTON Vehicle 1 the white plastic bag he had been carrying when he exited DOSS Vehicle 1 a few minutes earlier. LEOs recovered the bag and a white brick-shaped substance that had been in the bag. Illinois State Police lab analysis confirmed that the object LEOs observed WALTON throw from the window of WALTON Vehicle 1 consisted of approximately 887.5 grams of a substance containing fentanyl.

20. After throwing the fentanyl out the window, WALTON, driving WALTON Vehicle 1, attempted to make a right turn off of Lincoln Highway and hit a curb, which resulted in a flat tire. WALTON and the female passenger in WALTON

Vehicle 1 fled on foot, but LEOs stopped and detained them. LEOs arrested WALTON and transported him in custody to a Chicago Police Department facility. The female passenger was released without charges.

### III. RAK, HOLMES, SR., and DOSS Discussed WALTON's Arrest and LEOs Seizure of the Fentanyl

21. At approximately 6:52 p.m., HOLMES, SR., using Target Phone 5, had a telephone conversation with RAK, using RAK Phone 1. During the call, RAK asked, "You hear anything [have you heard from WALTON since the drug transaction between WALTON and DOSS]?" HOLMES, SR. responded, "Nope." RAK said, "Mother fucking, man. I don't like the voice of Chris [RAK was suspicious that DOSS was lying to him about what happened at the drug transaction with WALTON]." HOLMES, SR. said, "I tried to call somebody who lived out there [near the area where DOSS and WALTON met for the drug transaction], but they didn't answer me," and added, "Let me make one more call." RAK said, "Yeah, because both of the things [WALTON's phones] are shut off, and this [the narcotics transaction between WALTON and DOSS] happened about an hour ago. You don't have his [WALTON's] girlfriend's number?" HOLMES, SR. responded, "No." RAK said, "Son of a bitch. Well, fucking Chris [DOSS] came up with some bullshit that he seen him [WALTON] and everything was fine, and they [LEOs] must have been on him. That kind of shit. And he pulled out [DOSS drove away from the narcotics transaction], and they [LEOs] went right past him, blue coats, undercover [the LEOs who pulled over WALTON were operating in an undercover capacity]." HOLMES, SR. asked, "So this is after he gave him the stuff? Or he didn't even give it to him [had DOSS given WALTON the

11

fentanyl before he was arrested]?" RAK responded, "Yeah, he gave it [the fentanyl] to him." HOLMES, SR. said, "Alright." Later, RAK said, "Usually he has somebody as a backup [during prior narcotics transactions, WALTON had a second person drive a separate car and transport the narcotics]." HOLMES, SR. agreed, saying, "Right." RAK said, "He's [WALTON is] way smarter than that…I told Chris [DOSS] to go over by you [to HOLMES, SR.'s residence on Maypole Avenue]….You don't think Chris [DOSS] would pull the okie doke [set up WALTON to get arrested by LEOs]?" HOLMES, SR. responded, "I don't think so." The conversation continued, and RAK asked, "You got some other way to check on him [WALTON]? Cause we need to." HOLMES, SR. responded, "Yeah, let me try this." RAK said, "Call me back."

22. At approximately 7:14 p.m., HOLMES, SR., using Target Phone 5, had a telephone conversation with RAK, using RAK Phone 1. During the call, RAK said, "I just talked to Chris [DOSS] again." HOLMES, SR. responded, "He is right here with me [DOSS was at HOLMES, SR.'s residence]."

23. At approximately 7:18 p.m., LEOs observed DOSS Vehicle 1 parked on the 4700 block of W. Maypole Street in Chicago, across the street from the residence of HOLMES, SR.

24. At approximately 7:59 p.m., HOLMES, SR., using Target Phone 5, had a telephone conversation with RAK, using RAK Phone 1. During the call, HOLMES, SR. said, "His [WALTON's] phone wasn't on." RAK asked, "So what's the next step here?" HOLMES, SR. responded, "I don't know…You said get somebody out there. I'm fittin to see if somebody else got a number on him [another phone number for

WALTON]." RAK asked, "What do you make of the story that Chris [DOSS] told you?" HOLMES, SR. replied, "I don't know." RAK asked, "He [DOSS] still with you?" HOLMES SR. responded, "No, he gone." Later, HOLMES, SR. said, "He [DOSS] is a little scared. Like somebody might come get him."

25. The conversation continued, and RAK said, "He [WALTON] probably didn't have that [the fentanyl] with him. He probably handed it to somebody, no?" HOLMES, SR. answered, "He [WALTON] don't usually do nothing without two cars [WALTON generally uses a second car and driver to transport narcotics rather than keep the narcotics in his own car]." Later, HOLMES, SR. said, "I really don't know why they [WALTON and DOSS] met in Tinley Park [a Chicago suburb near Matteson, Illinois]. It's probably convenient for what's his name [DOSS] to get off the road. You know what I mean? Off the highway." Later, RAK asked, "You think you can send somebody to his [WALTON's] house?" HOLMES, SR. said, "Let me try to call his girl [WALTON's girlfriend] again." RAK then asked, "Where did Chris [DOSS] take off to? Up north [Wisconsin]?" HOLMES, SR. responded, "Yep." RAK said, "Alright. Let him [DOSS] be, for the time being."

26. At approximately 8:06 p.m., HOLMES, SR., using Target Phone 5, had a telephone conversation with RAK, using RAK Phone 1. During the call, RAK asked, "Got any news?" HOLMES, SR. responded, "Nah man [No]." Later, HOLMES, SR. asked, "What did he [DOSS] give him [WALTON]?" RAK replied, "One, eh, one 'Ray' [one 'Ray Charles,' which is code for a kilogram of heroin]." RAK asked, "You don't think he made a deal with somebody [was WALTON cooperating with law

13

enforcement to get out of trouble for getting caught with the narcotics]?" HOLMES, SR. said, "I don't think so." The conversation continued and later RAK asked, "Ain't you got nobody you can to his [WALTON's] house?" HOLMES, SR. responded, "I just told you I'm trying to contact somebody out that way."

### IV. Conclusion

27. Based on the foregoing, I submit that there is probable cause to believe as follows:

a. KRZYSZTOF RAK and CHRISTOPHER J. DOSS did conspire with each other and with others known and unknown to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846; and

b. DONALD HOLMES, SR. and IVAN WALTON did conspire with each other and with others known and unknown to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of mixtures and substances containing a detectable amount of fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846.

FURTHER AFFIANT SAYETH NOT.

_____
NICHOLAS J. ALBERT
Special Agent,
Drug Enforcement Administration

SUBSCRIBED AND SWORN to before me on June 11, 2018.

_____
DANIEL G. MARTIN
United States Magistrate Judge